2026 IL App (3d) 240722

Opinion filed July 20, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| WARREN S. WINKLER, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0722 |
| | ) | Circuit No. 24-SC-732 |
| WELD ALL, INC., | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas A. Else, |
| | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Peterson and Anderson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1  Plaintiff, Warren S. Winkler, LLC, obtained a $10,000 default judgment against defendant, Weld All, Inc. Within 30 days, defendant moved to vacate the judgment (735 ILCS 5/2-1301 (West 2024)). The circuit court denied the motion. Within 30 days of that denial, defendant moved to reconsider and then filed this appeal. While the appeal was pending, the circuit court granted defendant's motion to reconsider, vacated the default judgment, and set the matter for trial.

¶ 2  We conclude the circuit court lacked jurisdiction to consider defendant's motion to reconsider. We also conclude the circuit court abused its discretion when it entered the default and denied defendant's motion to vacate. We therefore vacate as void the order granting the motion to

reconsider, reverse the default judgment and the order denying defendant's motion to vacate, and remand this matter for a trial on the merits.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiff sued defendant in January 2024. Plaintiff alleged a breach of contract and sought $10,000. The complaint was not verified by a representative of plaintiff; it was signed by counsel under penalty of perjury (*id.* § 1-109). A summons was issued with a return date of April 22, 2024. On the return date, plaintiff appeared with counsel. Defendant's president, Dennis Spal, appeared without counsel.[1] Spal acknowledged service. Because plaintiff had not filed proof of service, however, the court continued the matter to July 24, 2024, for status. At the hearing's conclusion, Spal asked the court whether the case could be tried that day. The court responded, "No."

¶ 5        On July 24, 2024, plaintiff appeared with counsel. Spal appeared for defendant, again without counsel. The court set a bench trial for October 30, 2024, and stated it would prepare the order. The court addressed Spal personally. It told him he had seven days to file an appearance if he had not done so already. The court also told Spal that he could obtain a copy of the order— which would contain important information for trial—online or from the circuit clerk's office within two days. The court warned Spal it was his responsibility to obtain and read the order; the order would not be mailed to him. Finally, the court cautioned that "[p]eople lose cases every day because they don't read the order." Spal told the court he understood. The following exchange occurred at the hearing's end:

          "[SPAL]: Why can't we take care of it today?

---

[1]A corporation is permitted to defend a small claim without counsel, through a corporate representative. Ill. S. Ct. R. 282(b) (eff. Jan. 1, 2018).

THE COURT: Go in the hall and take care of it. Other than that, I'm setting it for trial. Other than that, have a nice day.

[SPAL]: Can I ask you a question?

THE COURT: Sure.

[SPAL]: What was the reason for today's—and the first—I thought we were going to settle it. I thought this was—

THE COURT: You can settle it any time you want to. There's the lawyer. Go settle it.

[SPAL]: Okay.

THE COURT: Okay. If you settle it—Counsel, if it's settled, just give me an order of dismissal. Okay?

[SPAL]: I just thought that—

THE COURT: Have a nice day."

¶ 6    The court's written order reiterated the directive that defendant file an appearance within seven days. It warned the failure to do so "could lead to default judgment." The order also required the parties to exchange trial exhibits by October 23, 2024. It warned the failure to do so could lead to the exhibits being barred. Finally, the order warned the "[f]ailure to follow this order could lead to sanctions" and stated the "[p]arties were directed to read this order."

¶ 7    Spal did not obtain a copy of the July 2024 order. Nor did he file an appearance on defendant's behalf. The record contains no indication either party exchanged their trial exhibits.

¶ 8    On October 30, 2024, plaintiff appeared with counsel. Spal appeared on defendant's behalf, again without counsel. Immediately after the participants identified themselves for the record, the court entered a default judgment in plaintiff's favor:

3

"THE COURT: Okay. On July 24, 2024, there was an order entered by this Court which provides, in relevant part, as follows:

Defendant to file appearance within seven days. Failure to file appearance could lead to default judgment. Failure to follow this order could lead to sanctions. Parties were directed to read this order.

Asking for a default judgment?

[PLAINTIFF'S COUNSEL]: Yes, your Honor.

THE COURT: Granted.

Have a nice day.

***

[SPAL]: I don't understand—

THE COURT: That means you're done."

The court awarded plaintiff $10,000 and directed plaintiff to prepare the written judgment. The following exchange occurred at the hearing's end:

"THE COURT: Were you going to say something?

[SPAL]: I—I don't understand. I mean—

THE COURT: Well, you understood when you were standing here before. Remember, I told you I'm going to prepare the order, it's your responsibility to get a copy of the order, you'll have seven days to file your appearance. I did it back in July.

Look at the order. Did you read the order?

[SPAL]: I—obviously, I don't—I didn't—I don't know what order there is that I was to look at.

4

THE COURT: That order.

[SPAL]: Okay. What you handed me?

THE COURT: Uh-huh.

[SPAL]: Okay. And what was I to do?

THE COURT: Line 1, what does it say? Defendant is to—defendant—

[SPAL]: File appearance within seven days.

THE COURT: Okay. You're the defendant. You didn't file an appearance.

[SPAL]: I was to file an appearance here?

THE COURT: Yes. You didn't file an appearance.

[SPAL]: What is the purpose of that?

THE COURT: What's the purpose of filing an appearance?

[SPAL]: Yeah.

THE COURT: Okay, sir. We're not going to go into, like Law Number 1, you know. Defendants are required—everyone, in order to have—for the court to have jurisdiction over them, they must file an appearance; okay? You, in order to appear in court and have your case heard, were required to file an appearance.

Back in July, I gave you seven days. It says right in the order if you don't file your appearance, an order of default can be granted. It says I told you to read the order, I told you there's going to be sanctions if you don't, and you didn't. They win.

Have a nice day.

[SPAL]: Can I ask you one more?

THE COURT: One more.

5

[SPAL]: What was the—what was the reason for today's date then?

THE COURT: It was for trial. I assumed—well, I didn't assume, but—because this happened. I checked to see whether or not you'd filed—you had filed an appearance. You have not filed an appearance. That's the order requiring you to do that. You didn't do it; okay? All right."

¶ 9　　Defendant retained counsel. On November 22, 2024, defendant filed a verified motion to vacate the default under section 2-1301(e) of the Code of Civil Procedure (Code) (*id.* § 2-1301(e)). We will refer to this motion as the first postjudgment motion. Defendant noted Spal did not understand how to file an appearance and did not fully grasp the "grav[e] *** consequences" that could result from noncompliance with the July 2024 order. Defendant contended (without elaboration) it had a meritorious defense to the action. It further contended that vacating the judgment would not cause plaintiff undue hardship.

¶ 10　　On December 3, 2024, the court held a hearing on the first postjudgment motion. Counsel identified himself and the motion that he was presenting. The court interjected, "Well, no, it's not quite that easy, is it?" The court noted the procedural history of the case and defendant's failure to file an appearance and exchange documents as required by the July 2024 order. The following exchange then occurred:

"THE COURT: ***. What [Spal] should have done, and you are a good lawyer, you know, if he had hired you then instead of now, the first thing you would have done was file your appearance and you wouldn't be standing here right now asking me to vacate a default judgment.

[DEFENDANT'S COUNSEL]: Yes, Judge.

THE COURT: The orders that are on this call are there for a reason.

6

[DEFENDANT'S COUNSEL]: I understand, Judge.

And I talked to *** Spal. He is a nice guy, but he doesn't understand—he didn't understand what he was doing. I know your Honor told him at length, and he admitted to me at length that is what you had told him. He didn't realize he would be placing himself in this kind of a position.

He doesn't know how to—he is not very tech savvy, he doesn't know how to e-file. And that is no excuse because I know, as well as your Honor knows, he can go downstairs and e-file with help.

THE COURT: It says parties were directed to read this order.

[DEFENDANT'S COUNSEL]: I know, Judge.

THE COURT: So if I do this, the wheels will fall off this entire call. Okay.

So I understand the position you are in. I know that you want me to vacate that judgment, but I am not vacating that judgment.

Your motion is, respectfully, denied."

¶ 11    On December 23, 2024, defendant filed a verified motion to reconsider the denial of its motion to vacate. We will refer to this motion as the successive motion or the successive postjudgment motion.[2]

¶ 12    On December 26, 2024, defendant presented the successive motion. The court entered a briefing schedule and set it for hearing in March 2025. Less than two hours after presenting its

---

[2]As noted below, a successive postjudgment motion is one that asks the court to reconsider its decision on a first postjudgment motion. *Owens v. Berkshire Nursing & Rehab Center, LLC*, 2026 IL App (1st) 241662, ¶ 25.

7

motion, defendant filed a notice of appeal. On December 31, 2024, the court stayed enforcement of the judgment conditioned on a $10,000 bond, which defendant posted later that day.

¶ 13 After the parties filed their briefs on appeal, we determined there was a potential jurisdictional bar to our review. At the time defendant filed its notice of appeal, the court had yet to rule on the successive postjudgment motion. Generally, a pending postjudgment motion renders a notice of appeal ineffective until the motion is ruled upon. See Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017) (a notice of appeal becomes effective when the court rules on the last pending postjudgment motion); *Salah v. Illinois Department of Employment Security*, 2025 IL App (1st) 240641-U, ¶¶ 13-16 (dismissing the appeal for lack of jurisdiction where there remained pending in the circuit court a timely postjudgment motion, and neither the record nor the clerk's online docket showed resolution or withdrawal of the motion); see also *Chand v. Schlimme*, 138 Ill. 2d 469, 477-78 (1990) (holding that the filing of a notice of appeal, alone, does not "abandon an otherwise effective post-trial motion or *** deprive the trial court of jurisdiction"). Thus, we ordered defendant to supplement the common law record and later granted defendant leave to supplement the report of proceedings.

¶ 14 On March 28, 2025, the circuit court held a hearing on defendant's successive postjudgment motion. Immediately after the parties' attorneys identified themselves, the court granted the motion and set the matter for trial.[3] The parties—before and after the court granted the successive motion—objected to the court's jurisdiction to do so. They argued defendant's notice of appeal had divested the circuit court of jurisdiction to make any further orders in the case. The

---

[3]We are quite perplexed by the parties' failure to notify us that the circuit court had granted the motion. That order was entered three days before defendant filed its brief in this court and, as discussed below, had significant implications for this appeal.

court rejected the parties' arguments. In any event, the court stayed the proceedings in June 2025 pending this appeal.

¶ 15                                              II. ANALYSIS

¶ 16        Defendant contends the circuit court abused its discretion when it awarded default judgment to plaintiff and when it denied defendant's motion to vacate the default judgment. Defendant asks us to reverse the circuit court's default judgment and remand for further proceedings.

¶ 17                                     A. Mootness and Jurisdiction

¶ 18        In March 2025, the circuit court granted defendant the very same relief defendant seeks from this court when it granted defendant's successive postjudgment motion. This raises the threshold question of mootness. See *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001) ("An appeal is moot when \*\*\* the reviewing court cannot grant the complaining party effectual relief."); *Old Second National Bank, N.A. v. Karolewicz*, 2022 IL App (1st) 192091, ¶ 26 (mootness is a threshold question). We believe the answer to that question rests in the answer to a different question—whether the circuit court had jurisdiction to grant the successive postjudgment motion.

¶ 19        If the circuit court had jurisdiction to grant the motion, then defendant's appeal would be moot, as we would be unable to grant defendant any relief that it would not have already obtained. If this is the case, we would simply dismiss the appeal, as the question presented does not fall within an exception to the mootness doctrine. See *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 293 (2005). If the court lacked jurisdiction, however, then its order granting the successive motion would be a nullity (*Nunez v. C&C Investments of Chicago, LLC*, 2022 IL App (1st) 211423, ¶¶ 21-22), and this appeal would not be moot. If that is the case, we would vacate as void the order

9

granting the successive motion (*Schak v. Blom*, 334 Ill. App. 3d 129, 134 (2002)) and proceed to the merits of defendant's appeal.

¶ 20    Accordingly, after oral argument, we directed the parties to some relevant authorities and asked them to brief the following question: "Did the circuit court have jurisdiction to rule on the successive postjudgment motion?"

¶ 21                               1. *Standard of Review*

¶ 22    This jurisdictional question is one of law, so our review is *de novo*. *McCormick v. Robertson*, 2015 IL 118230, ¶ 18.

¶ 23                               2. *Final Judgments*

¶ 24    We begin with the basic rule that a final judgment is one "that fixes the rights of the parties absolutely and finally in the litigation and terminates the litigation on the merits so that if the judgment is affirmed, the only thing left to do is to proceed with the execution of the judgment." *In re Application of the County Collector*, 395 Ill. App. 3d 155, 159 (2009). In this case, the default judgment awarding plaintiff $10,000 on the sole count of its complaint terminated the litigation on the merits. As such, the order was final and appealable. *Id.*; see Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 25                          3. *Direct Challenges to Final Judgments*

¶ 26    Final judgments are subject to direct challenge, both in the circuit court by filing a motion under sections 2-1202, 2-1203, or 2-1301(e) of the Code, and in the appellate court by filing a notice of appeal. See 735 ILCS 5/2-1202 (West 2024) (governing postjudgment motions in jury cases); *id.* § 2-1203 (governing postjudgment motions in nonjury cases); *id.* § 2-1301(e) (governing postjudgment motions in cases where judgment is entered by default); Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) (providing that every final judgment is appealable as of right and is initiated by filing a notice of appeal). The statutes and supreme court rules set forth strict 30-day time

limitations for challenging a final judgment. A postjudgment motion in the circuit court, whether in a jury, nonjury, or default case, must be filed within 30 days of the entry of the final judgment or within any extension of time allowed within that 30-day window. 735 ILCS 5/2-1202(c), 2-1203(a), 2-1301(e) (West 2024); Ill. S. Ct. R. 274 (eff. July 1, 2019). Likewise, a notice of appeal must be filed within 30 days of the final judgment or within 30 days of the denial of the last pending, timely postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 27 These 30-day deadlines have "immemorially been termed 'jurisdictional.' " *In re Marriage of Singel*, 373 Ill. App. 3d 554, 558 (2007) (O'Malley, J., specially concurring); see *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (explaining a timely notice of appeal "is both jurisdictional and mandatory"); *Peraino v. County of Winnebago*, 2018 IL App (2d) 170368, ¶ 24 (describing the 30-day deadline to file a postjudgment motion to reconsider as "jurisdictional" and holding the circuit court lacked jurisdiction to consider an untimely postjudgment motion). This is because a circuit court's jurisdiction or the appellate court's potential jurisdiction to modify or vacate a final judgment is understood to terminate on the thirty-first day after a judgment. *Peraino*, 2018 IL App (2d) 170368, ¶ 15; *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 40 (2011). After the thirtieth day, the parties must either accept the judgment or seek relief in collateral proceedings. See, *e.g.*, 735 ILCS 5/2-1401 (West 2024). However, a timely postjudgment motion filed under one of the above-referenced sections of the Code (*id.* §§ 2-1202, 2-1203, 2-1301(e)) "extends [both] the circuit court's jurisdiction, [and] the appellate court's potential jurisdiction *** until 30 days after the motion is denied." *Sears v. Sears*, 85 Ill. 2d 253, 258 (1981).

¶ 28 4. *Successive Postjudgment Motions*

¶ 29 Successive postjudgment motions are plainly prohibited by supreme court rule—each party "may make only one postjudgment motion directed at a judgment order that is otherwise final and appealable."[4] Ill. S. Ct. R. 274 (eff. July 1, 2019). A successive postjudgment motion is one that requests reconsideration after the first postjudgment motion is denied. *Owens v. Berkshire Nursing & Rehab Center, LLC*, 2026 IL App (1st) 241662, ¶ 25. The motion at issue here is a textbook example of a successive postjudgment motion. Defendant titled its motion a "motion to reconsider," styled its motion as such, and in its prayer for relief asked the court to "reconsider the denial of [defendant's] Motion for Relief from Default Judgment."

¶ 30 It is beyond dispute that successive postjudgment motions are procedurally improper; they are unauthorized by statute and forbidden by supreme court rule. *Sears*, 85 Ill. 2d at 259; Ill. S. Ct. R. 274 (eff. July 1, 2019). According to our supreme court, a circuit court must not grant a successive postjudgment motion. See *Sears*, 85 Ill. 2d at 259.

¶ 31 The circuit court thus never should have granted defendant's successive postjudgment motion. This does not end the discussion, however, because an erroneous order is not void; it is voidable. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. If the order is voidable, then it is beyond our reach at this time because our jurisdiction extends only to the judgments specified in the notice of appeal and any orders which were steps in the procedural progression leading to the specified judgment. See *In re Marriage of Arjmand*, 2024 IL 129155, ¶ 29. The order *granting* defendant's successive postjudgment motion cannot be said to have been an order "leading" to the judgment that defendant challenges on appeal (the default judgment). And in addition, an order vacating a default is not a final order and is not immediately appealable. *Federal National*

---

[4]This restriction is relaxed when the circuit court modifies the final order, pursuant to a timely postjudgment motion or otherwise. Ill. S. Ct. R. 274 (eff. July 1, 2019). In such cases, affected parties have 30 days to file a postjudgment motion directed at the new, or "superseding," judgment. *Id.*

*Mortgage Ass'n v. Tomei*, 2014 IL App (2d) 130652, ¶ 15. If the order is voidable, it would be beyond our reach until the court entered judgment on the complaint a second time. *Arjmand*, 2024 IL 129155, ¶ 29.

¶ 32 If the court lacked jurisdiction to consider the motion, then the order granting the motion is void. *Trice*, 2015 IL 116129, ¶ 39. A void judgment "*may be attacked at any time or in any court, either directly or collaterally.*" (Emphasis in original and internal quotation marks omitted.) *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 309 (1986). Stated differently, a void judgment "may be challenged in perpetuity." *Trice*, 2015 IL 116129, ¶ 38. Further, we have a duty to vacate void judgments and orders of which we have knowledge, even if the judgment or order is not technically before us for review. *Wierzbicki v. Gleason*, 388 Ill. App. 3d 921, 931 (2009).

¶ 33 5. *The Circuit Court's Order Granting the Successive Postjudgment Motion*

*is Void for Lack of Jurisdiction and This Appeal is Not Moot*

¶ 34 We conclude the order granting defendant's successive postjudgment motion was void for lack of jurisdiction. The parties argue on appeal, as they did in the circuit court, that defendant's notice of appeal divested the circuit court of jurisdiction to substantively modify the judgment on appeal. We agree with the parties in the main but believe this point requires a little more explanation.

¶ 35 Generally, a timely notice of appeal strips the circuit court's jurisdiction to make orders that substantively alter the issues on appeal. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011); see *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 162 (1998) ("[O]rders entered after the filing of the notice of appeal are valid if the substantive issues on appeal are not altered so as to present a new case to the reviewing court."). Indeed, upon the timely filing of a

13

notice of appeal, the appellate court's jurisdiction attaches at once and the matter is placed beyond the circuit court's jurisdictional reach. *Pappas*, 242 Ill. 2d at 173.

¶ 36 However, a timely postjudgment motion prevents application of this rule until after the timely motion has been disposed of. See *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 343 (2001). Indeed, Rule 303(a)(2) provides that when "any party" files a "timely postjudgment motion," "a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, *** becomes effective when the order disposing of said motion *** is entered." Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017). This rule holds true when the postjudgment motion is filed after the notice of appeal. *Brown*, 197 Ill. 2d at 343. It even holds true when the same party who filed the timely postjudgment motion filed the notice of appeal before the motion is ruled upon: the filing of a notice of appeal does not "act[ ] as an abandonment by operation of law." *Chand*, 138 Ill. 2d at 477-78.

¶ 37 We had some pause in applying the rule of *Pappas*, 242 Ill. 2d at 173, because the parties' position failed to reconcile that principle with those discussed in *Brown*, 197 Ill. 2d at 343. However, we find there is no inconsistency in finding the notice of appeal divested the circuit court of jurisdiction notwithstanding the pending successive postjudgment motion.

¶ 38 Rule 303(a)(2) plainly states that only a *timely* postjudgment motion renders a notice of appeal ineffective until the court disposes of the motion. The successive motion here was not timely. The default judgment was entered on October 30, 2024. This meant any postjudgment motions had to be filed within 30 days, no later than December 2, 2024.[5] 735 ILCS 5/2-1203(a), 2-1301(e) (West 2024). Defendant filed its successive motion on December 23, 2024, well outside

---

[5]The thirtieth day, November 29, 2024, was a court holiday, meaning any postjudgment motions were due on the next court business day, December 2, 2024. 5 ILCS 70/1.11 (West 2024).

14

the 30-day deadline. As such, it was "a nullity." *Village of Island Lake v. Parkway Bank & Trust Co.*, 212 Ill. App. 3d 115, 123 (1991). And because it was a nullity, the successive postjudgment motion could not render defendant's December 26, 2024, notice of appeal ineffective.

¶ 39 Thus, the rule of *Pappas* applies: the notice of appeal divested the circuit court of jurisdiction to make any orders that substantially altered the issues on appeal. Because the circuit court's order granting the successive postjudgment motion did exactly that, it lacked jurisdiction to grant the motion. Its order is void and must be vacated. *Schak*, 334 Ill. App. 3d at 134.

¶ 40 The fact that defendant's successive motion was filed within 30 days of the court's denial of defendant's first postjudgment motion does not change this conclusion. That denial was not a new final judgment (*In re Marriage of Harris*, 2015 IL App (2d) 140616, ¶ 13) and did not open a new 30-day window in which to file additional postjudgment motions. Rather, the final judgment for purposes of the 30-day window to file postjudgment motions remained the default judgment. The successive motion—not having been filed within 30 days of the final judgment—was untimely.

¶ 41 Finally, we note the circuit court rejected the parties' jurisdictional objections to the successive postjudgment motion, finding it had jurisdiction to consider the motion. We do not fault the circuit court for its determination that it had jurisdiction, as the case law on this issue is not exactly clear. Indeed, the circuit court's determination at one time had some footing in case law— some panels of the Second District of this court sustained that view for nearly three decades. See *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 514-17 (1992); *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 48-49 (2001); *People v. Serio*, 357 Ill. App. 3d 806, 818 (2005); *People v. Walker*, 395 Ill. App. 3d 860, 869 (2009). As the court in *Serio* put it,

15

"The *trial court* has jurisdiction to rule on a successive postjudgment motion where the successive motion is filed within 30 days of the final disposition of the preceding postjudgment motion. Jurisdiction vests in the *appellate court* when the trial court disposes of the successive motion and a notice of appeal is filed within 30 days of the denial of the first motion attacking the judgment." (Emphases in original.) *Serio*, 357 Ill. App. 3d at 818.

¶ 42 This view of the circuit court's jurisdiction was a departure from other decisions of this court that held the circuit court has no jurisdiction to consider successive postjudgment motions. See *B-G Associates, Inc. v. Giron*, 194 Ill. App. 3d 52, 58-59 (1st Dist. 1990) (holding the circuit court "was without jurisdiction to enter subsequent orders *** relating to the merits of the underlying cause of action" after the defendants' first postjudgment motion was stricken with prejudice (which was akin to a denial)); *Illinois State Toll Highway Authority v. Gary-Wheaton Bank*, 203 Ill. App. 3d 672, 676-77 (2d Dist. 1990) (deciding appellate jurisdiction but noting that a trial court "has no jurisdiction" to consider successive postjudgment motions); *Village of Island Lake*, 212 Ill. App. 3d at 121 (Second District concluding "the trial court lost jurisdiction" after it denied the defendants' "one, authorized post-judgment motion"); see also *Benet Realty Corp. v. Lisle Savings & Loan Ass'n*, 175 Ill. App. 3d 227, 234 (2d Dist. 1988) (concluding that once a party's only authorized postjudgment motion is denied, "the party has no other recourse but to accept the trial court's judgment or file a notice of appeal within 30 days of the denial").

¶ 43 In 2019, however, the Second District—with the authoring justice of *Agustsson*, *Gibson*, and *Walker* dissenting—declined to follow those cases, instead concluding the circuit court lacks jurisdiction to consider a successive postjudgment motion. *People v. Orahim*, 2019 IL App (2d) 170257, ¶¶ 5-6. The weight of authority now takes this position. See *Old Second National Bank*,

16

2022 IL App (1st) 192091, ¶ 21; *Royal Oak Condominium Ass'n v. Stevenson*, 2025 IL App (1st) 242317, ¶ 39; *People v. Stewart*, 2026 IL App (2d) 240641-U, ¶ 29.

¶ 44 After *Orahim*, we have doubts about the continued validity of *Agustsson*, *Serio*, and *Walker*. We decline any further comment, however, because we have resolved the jurisdictional question on a different basis—defendant's notice of appeal divested the circuit court of jurisdiction to make any further substantive orders. We vacate as void the circuit court's order granting defendant's successive postjudgment motion. *Wierzbicki*, 388 Ill. App. 3d at 931.

¶ 45 Because the court's order granting defendant the same relief it seeks in this court has been vacated, this appeal is not moot. See *Steinbrecher*, 197 Ill. 2d at 522-23.

¶ 46 B. The Default Judgment and Defendant's First Postjudgment Motion

¶ 47 Turning to the merits, defendant contends the circuit court abused its discretion when it (1) awarded a default judgment to plaintiff and (2) denied defendant's first postjudgment motion.

¶ 48 1. *Appellate Jurisdiction*

¶ 49 Preliminarily, we have jurisdiction to review the default judgment and the order denying defendant's first postjudgment motion. The circuit court denied defendant's timely first postjudgment motion on December 3, 2024. And although defendant moved to reconsider that ruling, it also filed a notice of appeal from the denial within 30 days, on December 26, 2024. As such, we have jurisdiction over this appeal. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 50 2. *Default Judgments*

¶ 51 Public policy prefers that legal disputes be resolved on their merits. *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 59; 735 ILCS 5/1-106 (West 2024). Nevertheless, the circuit court has discretion, under section 2-1301(d) of the Code, to enter judgment by default against a defendant who fails to appear. 735 ILCS 5/2-1301(d) (West 2024). Further, in such cases, the court has

17

discretion to enter judgment without receiving proof of the complaint's material allegations. *Id.*; *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 779 (2010). This is so, at least in part, because the failure to appear serves as an admission of the complaint's factual allegations. See *American Service*, 404 Ill. App. 3d at 779.

¶ 52   A default judgment, however, is a drastic remedy; it should be used *only* as a last resort. *Dupree*, 2011 IL App (4th) 100351, ¶ 57. Indeed, our supreme court has recognized that "[a] default [is] *** an action taken to punish for disobeying the court's command and should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 16.

¶ 53                            3. *Section 2-1301 of the Code*

¶ 54   Section 2-1301(e) of the Code provides the court with discretion to vacate the default judgment "upon any terms and conditions that shall be reasonable," provided the defaulted party files a motion within 30 days after its entry. 735 ILCS 5/2-1301(e) (West 2024). The defaulted party has the burden to establish a sufficient basis for vacating the default. *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001). Consistent with the policy of deciding disputes on their merits, courts construe section 2-1301(e) liberally in favor of vacating defaults. *McCluskey*, 2013 IL 115469, ¶ 16.

¶ 55                            4. *Standard of Review*

¶ 56   In exercising its discretion under section 2-1301, the court should consider all events preceding the default. *Mann*, 324 Ill. App. 3d at 377. "The overriding consideration," when deciding to grant or vacate a default judgment, "is the achievement of substantial justice." *H.D., Ltd. v. Department of Revenue*, 297 Ill. App. 3d 26, 32 (1998). To achieve substantial justice, the court may consider the severity of the penalty resulting from the default judgment and the attendant

18

hardship on plaintiff if obliged to proceed to a trial on the merits. *Venzor v. Carmen's Pizza Corp.*, 235 Ill. App. 3d 1053, 1057-58 (1992). When deciding whether to vacate a default under section 2-1301(e), the court may also—but is not required to—consider the existence of a meritorious defense and the moving party's diligence. *Mann*, 324 Ill. App. 3d at 377; see *In re Haley D.*, 2011 IL 110886, ¶ 57 (noting section 2-1301 of the Code does not require a showing of a meritorious defense and a reasonable excuse for not having timely asserted it). "What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome." (Internal quotation marks omitted.) *Mann*, 324 Ill. App. 3d at 377. Because both are matters of discretion, we must determine if the circuit court's decisions to award plaintiff a default and deny defendant's first postjudgment motion were unreasonable. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 71.

¶ 57                                    5. *This Case*

¶ 58            We conclude the circuit court abused its discretion when it entered a default judgment against defendant. After being served, Spal appeared on the return date. Because plaintiff had not filed proof of service, however, the court continued the matter for three months for plaintiff to do so. When both parties returned to court in July 2024, the court ordered defendant to file a written appearance within seven days and set trial for October 30, 2024. It also ordered the parties to exchange their trial exhibits by October 23, 2024. Defendant did not file an appearance.

¶ 59            When the parties appeared for trial, the court did not ask them whether they had exchanged trial exhibits—the record contains no proof that either party had done so—or whether they were otherwise ready for trial. Instead, the circuit court immediately noted defendant's failure to file an appearance and asked plaintiff if it was requesting a default judgment. Plaintiff replied that it was, and the court granted the request, telling the parties to "[h]ave a nice day."

19

¶ 60     We acknowledge the circuit court clearly and directly admonished Spal that defendant's failure to file an appearance might cause defendant to "lose [the] case[ ]" and the written order specifically warned of sanctions. We also acknowledge defendant failed to follow the court's clear directive notwithstanding this warning. However, the circuit court here treated default as a first resort, not as a last resort. See *Dupree*, 2011 IL App (4th) 100351, ¶ 57. The record does not show the court considered the severity of the penalty (a $10,000 judgment entered without any sworn proof), nor does it show the court asked plaintiff to identify any hardship it would face if required to prove its case at trial. See *Venzor*, 235 Ill. App. 3d at 1057-58. Instead, the court immediately asked plaintiff if it wanted a default judgment and then promptly awarded plaintiff $10,000, without asking either party if they were ready for trial.

¶ 61     We can certainly appreciate the circuit court's apparent desire to avoid any further delay in this case, which had been pending for nine months at the time it was called for trial. We nevertheless find the court's decision to award a default judgment unreasonable. The reasonable course would have been to take a brief break to allow Spal (a nonattorney) to take the short trip downstairs to the circuit clerk's office to file a written appearance. Up to that point, *none* of the delay in the case was attributable to defendant. Had the court simply allowed Spal to file defendant's appearance, trial could have proceeded that day (assuming plaintiff was ready, a fact the court never confirmed).

¶ 62     On this point, plaintiff notes defendant never tendered any trial exhibits as required by the July 2024 order. Thus, plaintiff argues, even if the court would have allowed Spal to file defendant's appearance on the trial date, defendant was still not in compliance with the July 2024 order and could not have tried the case that day.

¶ 63       We are not persuaded by plaintiff's argument for two reasons. First, the record does not show *either* party ever exchanged trial exhibits. No proofs of service were filed, and the circuit court never asked whether the parties had exchanged them. On the record before us, we cannot conclude either party had complied with the July 2024 order or was ready for trial. Second, even if we assume plaintiff had tendered its trial exhibits to defendant and was ready for trial, defendant may not necessarily have needed any documentary evidence to prevail. Plaintiff's claim could fail on plaintiff's proof alone. See 735 ILCS 5/2-1110 (West 2024) (governing motions for a directed finding); *DeHeer-Liss v. Friedman*, 227 Ill. App. 3d 422, 426-27 (1991) (discussing the standard for a directed finding and noting the plaintiff has the burden of proof to establish a breach of contract by a preponderance of the evidence).

¶ 64       Under the circumstances present here, we conclude a default judgment did not achieve substantial justice between the parties. *H.D., Ltd.*, 297 Ill. App. 3d at 32. Thus, the circuit court abused its discretion when it awarded plaintiff the default judgment.

¶ 65       We likewise conclude the circuit court abused its discretion when it denied defendant's first postjudgment motion. About three weeks after the court entered default judgment, defendant filed its first postjudgment motion, seeking relief from the default under section 2-1301(e) of the Code. 735 ILCS 5/2-1301(e) (West 2024). In the motion, defendant acknowledged it had not filed its appearance as required by the July 2024 order. It nevertheless asserted it was without counsel at the time and its representative did not know how to file an appearance or fully grasp the "grav[e] *** consequences" that could result from noncompliance. In addition, defendant asserted it had a meritorious defense and plaintiff would suffer no undue hardship if the default was vacated.

¶ 66       At the hearing on the motion, the court quickly chided defendant's motion, asking rhetorically, "it's not quite that easy, is it?" The court then noted defendant's failure to comply

with the July 2024 order. The court stated default would not have entered if defendant had filed its appearance, remarking "[t]he orders that are on this call are there for a reason." When defendant's counsel began arguing the basis of defendant's motion, the court redirected the focus to defendant's failure to comply with the July 2024 order, remarking this time that the "parties were directed to read [the July 2024] order." The court denied the motion, remarking this final time that doing otherwise would cause "the wheels [to] fall off" its "entire call."

¶ 67 The court's denial of defendant's first postjudgment motion is problematic. First, the record contains no indication the court considered the relevant factors; it instead reflects a singular focus on defendant's failure to comply with the July 2024 order. A court abuses its discretion when it fails to conduct a required balancing test. See *Carlson v. Jerousek*, 2016 IL App (2d) 151248, ¶ 69. Second, the basis for denial was erroneous. "If the same failure to act that caused the default in the first place automatically justified the failure to vacate the default, section 2-1301(e) would be meaningless: there would never be a situation where a default judgment was vacated." *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 575 (2003). Third, the court's final remark makes clear it was worried about how granting the motion might affect the rest of the cases on its call. A court's decision on a motion to vacate must be based on the case's specific facts and circumstances, not on a hard-and-fast rule that applies in all circumstances. *Mann*, 324 Ill. App. 3d at 377. For these reasons, the court abused its discretion in denying defendant's first postjudgment motion.

¶ 68 To sum up, we conclude the circuit court abused its discretion both when it awarded a default judgment to plaintiff and when it denied defendant's first postjudgment motion. Nothing in the record suggests defendant was contumaciously flouting the court's authority. To the contrary, defendant appeared on all three court dates in this case. On the first two occasions, Spal

22

expressed defendant's eagerness to participate in the case, either via settlement or trial. At the time the court defaulted defendant, none of the delay in the case was attributable to defendant. Under the facts and circumstances of this case, we fail to see how the drastic measure of a default judgment, entered without any sworn proof from someone with knowledge of the claim, achieved substantial justice. See *Haley D.*, 2011 IL 110886, ¶ 57. Accordingly, we reverse the default judgment and the order denying defendant's first postjudgment motion and remand for a trial on the merits.

¶ 69                                    III. CONCLUSION

¶ 70        For the reasons stated, we (1) vacate as void the circuit court's March 2025 order granting defendant's successive postjudgment motion, (2) reverse the default judgment and the order denying defendant's first postjudgment motion, and (3) remand this matter for a trial on the merits.

¶ 71        Reversed in part and vacated in part.

¶ 72        Cause remanded.

*Warren S. Winkler, LLC v. Weld All, Inc.*, 2026 IL App (3d) 240722

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 24-SC-732; the Hon. Thomas A. Else, Judge, presiding. |
| **Attorneys for Appellant:** | Peter M. Tumminaro, of Law Offices of Peter M. Tumminaro, Ltd., of Roselle, for appellant. |
| **Attorneys for Appellee:** | Sheila Genson, of The Winkler Group LLC, of Schaumburg, for appellee. |